IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
CASE NO:

| | | |
|---|---|---|
| JULIANN ASCENZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| KIRSTJEN M. NIELSEN, | ) | |
| Secretary, United States | ) | |
| Department of Homeland | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

NOW COMES plaintiff, JULIANN ASCENZO, by and through counsel and

pursuant to Fed. R. Civ. P. 8, complaining against defendant, KIRSTJEN M.

NIELSEN, Secretary, United States Department of Homeland Security, alleges and

says as follows:

## NATURE OF THE ACTION

This is an action under *Title VII of the Civil Rights Act of 1964,* as amended,

and the *Government Employee Rights Act of 1991* to correct unlawful employment

practices based on sex (gender) discrimination in the disciplinary practices;

retaliatory actions for having engaged in protected activity; and to provide

appropriate relief to Ascenzo, who has been, and continues to be, adversely affected

by such practices.

## JURISDICTION

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to the following statutes: 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII") and 42 U.S.C. § 200e-16, *et seq.* ("GERA").

2.    On information and belief, the unlawful personnel actions or practices, as alleged herein, were committed primarily in Durham County, North Carolina.

## PARTIES AND AFFILIATIONS

3.    Plaintiff Juliann Ascenzo ("Ascenzo") is female and is a citizen and resident of Dorchester County, South Carolina.

4.    At all relevant times, defendant Kirstjen M. Nielsen, Secretary, United States Department of Homeland Security ("Defendant") has been duly appointed and is serving as the Secretary of United States Department of Homeland Security, pursuant to 6 U.S.C. § 112. As such, Defendant is subject to the jurisdiction of this Court as head of the United States Department of Homeland Security and is the proper defendant in this action, pursuant to 42 U.S.C. § 2000e-16(c). Any reference to Defendant shall include reference to all of her predecessors and successors, if any, as Secretary of the United States Department of Homeland Security.

5.    At all relevant times, the United States Department of Homeland Security ("DHS") has been an "executive department" of the United States of America, as categorized in 5 U.S.C. § 101 and is organized in 6 U.S.C. § 111, *et seq.*

6.     At all relevant times, DHS has had thousands of employees and has operated under the immediate authority, direction, and control of Defendant Secretary and is subject to the jurisdiction of this Court, pursuant to 42 U.S.C. § 2000e-16(a), *et seq.*

7.     At all relevant times, the Transportation Security Administration ("TSA") has been an executive agency within the federal government and is organized under DHS and Defendant's supervision and control, pursuant to 49 U.S.C. § 114, *et seq.*

8.     At all relevant times, Ascenzo has been an "employee" of Defendant's DHS within the meaning of 42 U.S.C. § 2000e-16, *et seq.* where she has been assigned to work for the TSA.

9.     At all relevant times herein, Defendant's TSA has had a principal office in this judicial district of South Carolina. Further, venue is proper under 42 U.S.C. § 2000e-5(f) because Defendant's employment records pertaining to Ascenzo and the alleged incidents are contained in Ascenzo's personnel file, which upon information and belief, are located in Charleston County, South Carolina.

## ADMINISTRATIVE REMEDIES

10.     On or about September 26, 2016 and within 45 days of having been subjected to the discriminatory or retaliatory employment practices, as alleged herein, Ascenzo initiated contact and consulted with an EEO counselor, pursuant to 29 CFR 1614.105, concerning the discriminatory and retaliatory employment practices that Ascenzo experienced as a DHS employee.

11.     On or about December 5, 2016, Ascenzo engaged in the final counseling interview with her EEO counselor(s), pursuant to 29 CFR 1614.105 for the matters of which she had initiated contact. On or about December 25, 2016, Ascenzo received from the EEO counselor(s) a notice of right to file a formal complaint of discrimination against Defendant.

12.     On or about January 6, 2017, and within 15 days after Ascenzo's receipt of the notice of her right to file formal complaint by the EEO counselor(s), Ascenzo filed a formal complaint of discrimination ("EEO complaint") with Defendant, pursuant to 29 CFR 1614.106.

13.     On or about January 10, 2017, Defendant acknowledged receipt and acceptance of Ascenzo's formal complaint of discrimination, as alleged above.

14.     On or about July 19, 2017 and September 13, 2017, Defendant accepted an amended complaint of discrimination filed by Ascenzo to clarify additional claims.

15.     At all times relevant herein, Ascenzo has fully cooperated and participated in good faith throughout the EEO process pertaining to her formal complaint of discrimination, as alleged above.

16.     On or about November 13, 2017, Defendant through her managers issued a report of investigation ("ROI") pertaining to Ascenzo's formal complaint of discrimination and mailed the same to Ascenzo along with a notice of rights.

17.     Within 30 days after having received Defendant's ROI, Ascenzo timely filed a request for hearing before an administrative judge to the United States Equal Employment Opportunity Commission ("EEOC").

18.     On or about September 13, 2018, Ascenzo through counsel filed a notice of withdrawal of request for EEOC hearing and requested a final agency decision. On or about September 18, 2018, the presiding EEOC administrative judge issued an order honoring Ascenzo's request for withdrawal and ordered Defendant's HSA to issue a final agency decision, pursuant to 29 CFR § 1614.110.

19.     On or about December 13, 2018, Defendant issued its final agency decision pertaining to Ascenzo's formal charge of discrimination and mailed the same to Ascenzo along with her notice of rights.

20.     Ascenzo files this action within 90 days after having first received Defendant's final agency decision and notice of rights, pursuant to 42 U.S.C. § 2000e-16(c) and 29 CFR 1614.407(c).

21.     Ascenzo has satisfied all private, administrative, jurisdictional, and judicial prerequisites for the institution of this action and has duly exhausted all administrative remedies as may be required by law.

22.     At all times relevant herein, sovereign immunity defense is not applicable because of the acts of Congress pertaining to Title VII/GERA and because Ascenzo exhausted her administrative remedies, as alleged herein.

5

## COMMON FACTUAL ALLEGATIONS

### General

23.    On or about September 1, 2002, Ascenzo became employed by Defendant's TSA as a supervisory transportation security officer ("STSO") and assigned to work at the Raleigh-Durham International Airport ("RDU").

24.    Up to the events alleged herein, Ascenzo had performed her work duties at TSA in an exemplary manner. TSA always rated Ascenzo's work performance as "exceeded expectations" and had awarded Ascenzo various cash and "time-off" awards for passing tests and taking on extra duties in her work.

25.    Up to the events alleged herein, Ascenzo never received any disciplinary sanction, warning, or complaint in her 14 years as an STSO for Defendant.

26.    In February 2016, Ascenzo's management chain for TSA included TSM Jason Blankenship ("Blankenship"); D-AFSD Kenneth Macdonald ("Macdonald"); AFSD Linda White ("White"); and FSD Beth Walker ("Walker").

### Oliver Incident

27.    On February 6, 2016, STSO Pamela Oliver ("Oliver") accused TSO Correshia Carter ("Carter") of sleeping while on duty at RDU that same date.

28.    On February 8, 2016 at approximately 4:30 a.m., while Carter was speaking with Ascenzo in the lobby of RDU's Terminal 1, Oliver suddenly approached both Ascenzo and Carter. Oliver inquired whether Carter had completed her statement regarding the allegations that she had been sleeping while

6

on duty on February 6. In response, Carter asked Oliver if she could "give a few minutes." Oliver walked away from Carter and Ascenzo without saying anything further.

29.     On February 9, 2016 at approximately 11:00 a.m., Macdonald approached Carter to obtain a preliminary draft of her statement from her purse. Based on his demeanor and aggressive actions, Carter formulated a clear impression that Macdonald was trying to intimidate her into doing as he directed and did not appear interested in the truth of what had happened regarding the allegations of sleeping.

30.     Shortly after he approached her, Macdonald forced Carter to walk approximately one mile while he followed so Carter could get the preliminary statement from her purse, which was in Carter's parked car. At the time, Carter was roughly seven months pregnant.

31.     After getting the preliminary statement from Carter's car, Macdonald and Carter walked back to Macdonald's office. In the office, Macdonald inquired whether Ascenzo ever read the statement that he just collected. Carter responded "no." Macdonald repeatedly asked Carter whether Ascenzo directed her to "take the emotion" out of her statement draft. Carter repeatedly informed Macdonald "no." By his repeated question and aggressive demeanor, Carter developed the impression that Macdonald was trying falsely to get her to ascribe Ascenzo to statements she did not make.

7

32. At no time did Ascenzo ever instructed Carter to be anything other than completely honest in making her statement.

*Ascenzo complaints about Macdonald's gender discrimination*

33. On February 9, 2016, Ascenzo complained to Macdonald, a male, about his overly hostile and aggressive demeanor towards her as a female.

34. On February 11, 2016, Ascenzo complained to White about Macdonald's over hostile and aggressive demeanor towards her as a female.

35. On February 22, 2016, Ascenzo complained to Walker about Macdonald's overly hostile and aggressive demeanor towards her as a female.

*Macdonald caused Ascenzo's termination*

36. On or about March 21, 2016, Macdonald issued Ascenzo a "notice of proposed removal" to initiate proceedings for Ascenzo to be terminated for pretextual reasons in retaliation for having complained about him for gender discrimination.

37. On information and belief, Macdonald knew the allegations against Ascenzo were completely false, but caused action to be taken against her in retaliation for her having complained about him and the hostile work environment towards women that he generated.

38. On May 23, 2016, Walker issued Ascenzo a notice of termination based on Macdonald's accusations against her, which Walker knew or should have known were patently false.

39.     Based on Macdonald's false accusations, Walker accused Ascenzo with five pretextual charges pertaining to the Carter investigation: (1) interfering with an agency investigation; (2) failure to cooperate in an agency investigation; (3) making a false statement; (4) lack of candor; and (5) negligent performance of duty.

*The Appellate Board fully vindicates Ascenzo*

40.     On June 22, 2016, Ascenzo timely filed an internal grievance to appeal the Macdonald-Walker decision to terminate her employment for pretextual reasons.

41.     Both Ascenzo and TSA provided the Appellate Board for TSA's Office of Professional Responsibility ("Appellate Board") with evidence and written arguments concerning their respective positions regarding Ascenzo's termination by Walker and Macdonald.

42.     On August 9, 2016, after reviewing the evidence and arguments of both sides, the Appellate Board issued an opinion and decision ("final decision") that completely vindicated Ascenzo as for Macdonald and Walker's false allegations against her.

43.     In the final decision, the Appellate Board found that TSA management failed to prove *any* of the charges against Ascenzo by a preponderance of the evidence and ordered for Ascenzo to be immediately reinstated to her STSO position and returned to duty.

44.     In the final decision, the Appellate Board further ordered that Ascenzo receive back pay from the effective date of removal and ordered that this was a

"final" decision, pursuant to TSA policy, as set forth in TSA Management Directive 1100.77-1.

*TSA's management "double-downs" on pressing false accusations against Ascenzo*

45.     On or about August 19-24, 2016, following the Appellate Board's issuance of the final decision vindicating Ascenzo, TSA management officials, Walker and Macdonald, through counsel informed Ascenzo through counsel that TSA would forego filing any "motion to reconsider" with the Appellate Board in exchange for Ascenzo agreeing as follows: 1) accept a *de facto* demotion in yearly salary by approximately $15,000 from what Ascenzo should have received upon full reinstatement to the designated position she would have received but for Walker/Macdonald's termination attempt; and 2) dismiss any and all EEO complaints of discrimination involving TSA and Walker/Macdonald.

46.     On August 24, 2016, Ascenzo through counsel declined TSA official's "offer to settle" the issuance of a final decision by the Appellate Board in exchange for accepting a *de facto* demotion and dismissal/release for any claims of discrimination against TSA.

*TSA's motion to reconsider for pretexual reasons*

47.     On August 24, 2016, after Ascenzo decline the offer to receive a *de facto* demotion and dismissal of discrimination claims, Defendant's TSA filed a "motion to reconsider" with the Appellate Board regarding the final decision it issued in favor of Ascenzo. TSA officials filed the "motion to reconsider" not based on new evidence,

10

but essentially to rehash its previous arguments and argue that the board "misinterpreted" the (pretextual) facts or "misapplied" policy.

48.    Even though Walker and Macdonald knew that the allegations against Ascenzo were false, they filed the motion for reconsideration in continued retaliation against Ascenzo for having complained about Macdonald's gender harassment and for her refusal to accept a *de facto* demotion following the Appellate Board's issuance of the opinion and decision vindicating Ascenzo.

49.    On November 16, 2016, TSA's Appellate Board issued a "decision on reconsideration" that affirmed its previous decision with one exception. Even though no new evidence was presented, the Appellate Board found that TSA management "showed that Charge 2, *Failure to Cooperate in an Investigation,* Specification 2, was supported by preponderance of the evidence.

50.    The referenced Charge 2, *Failure to Cooperate in an Investigation,* Specification 2 was based on the false allegation that on February 9, 2016, Macdonald had asked Ascenzo if she had spoken to TSO Carter about the alleged incident of falling asleep while on duty. Macdonald alleged that Ascenzo had responded that she "did not want to say anything that would 'incriminate' the TSO."

51.    Although the Appellate Board had previously found that the charge was invalid because it was unclear whether Ascenzo was informed that the conversation with Macdonald was part of an agency investigation, TSA officials argued that the "record clearly shows" that Ascenzo was put on notice of the investigative nature of Macdonald' questioning. TSA officials argued that

11

Macdonald had informed Ascenzo that "I recommend that she tell the truth or she will be held accountable up to and including removal for lack of candor if it's determined that she is lying." This was a false statement by Macdonald, the one who initiated the pretextual charges against Ascenzo in the first place.

52.     However, the Appellate Board found that Charge 2, Specification 2 was "preponderant evidence" to show that Ascenzo was aware that Macdonald's alleged questions were part of a formal investigation.

53.     Because it found one of the five charges against Ascenzo to be sustained on reconsideration, the Appellate Board ordered the mitigated penalty of a 14-day to 30-day suspension without pay. As a result, TSA officials, Walker and Macdonald caused Ascenzo to receive a disciplinary suspension without pay for 14-days for pretextual reasons in retaliation for having complained about gender discrimination and the hostile work environment at RDU under Walker and Macdonald.

54.     In its order, the Appellate Board never explained the inconsistency of finding "preponderant evidence" based on Macdonald's self-interested statements when the remainder of its decision indicates that the TSA officials, including Macdonald had made untruthful accusations against Ascenzo, which caused the other charges to be unfounded.

55.     Following the suspension without pay, TSA officials continued to retaliate against Ascenzo through a hostile work environment with "passive-aggressive" actions designed to humiliate, undermine, and embarrass Ascenzo

12

professionally and among her peers. Defendant's retaliatory actions against Ascenzo through TSA officials, included the following:

a.  Initiating disciplinary actions against Ascenzo for pretextual reasons to put her in fear of termination without just cause;

b.  Causing Ascenzo to receive a disciplinary suspension without pay for 14 days for pretextual reasons;

c.  Requiring that Ascenzo accept a *de facto* demotion in pay and releasing Defendant from all claims of discrimination in exchange for TSA officials not filing a "motion to reconsider" with the Appellate Board for pretextual reasons;

d.  Causing the "motion to reconsider" to be filed with the Appellate Board for pretextual reasons;

e.  Forcing Ascenzo to attend "new hire" classes on or about September 19, 2016 even though she had been employed by TSA for many years in a retaliatory effort to harass and humiliate her;

f.  Forcing Ascenzo to report to the coordination center on or about September 19, 2016 even though she had been employed by TSA for many years in a retaliatory effort to harass and humiliate her;

g.  Failing to provide Ascenzo with a work performance rating in October 2016 in an effort to harass and humiliate her in addition to hurting her chances for promotion;

h.  Failing to select Ascenzo for a Coordination Center Officer position, as advertised under Vacancy Announcement Number RDU-16-175814,

13

after she duly applied for the same and, on information and belief, was the most qualified applicant for the position;

      i.      Failing to provide Ascenzo with due process related to the internal investigation of her on the pretextual disciplinary charges from February 2016 to May 2016; and

      j.      In such other and further ways as proven at trial.

56.      As a result of the retaliatory acts against her by the retaliatory actions of Defendant's TSA officials, Ascenzo has received harms, losses and damages and will continue to be harmed unless such acts are remediated and her losses are compensated.

## FIRST CLAIM FOR RELIEF
(Title VII-Retaliation)

57.      The foregoing allegations are hereby realleged and fully incorporated herein by reference as if fully set forth.

58.      At all times herein, Ascenzo was a member of a protected class under Title VII and GERA.

59.      Ascenzo engaged in protected activity under Title VII in the following ways:

      a.      On February 9, 2016, Ascenzo complained to Macdonald, a male, about his overly hostile and aggressive demeanor towards her as a female.

      b.      On February 11, 2016, Ascenzo complained to White about Macdonald's over hostile and aggressive demeanor towards her as a female.

14

c.    On February 22, 2016, Ascenzo complained to Walker about Macdonald's overly hostile and aggressive demeanor towards her as a female.

60.    Because Ascenzo engaged in protected activity, as alleged herein, Defendant's TSA managers retaliated against Ascenzo in the following manner:

a.    Initiating disciplinary actions against Ascenzo for pretextual reasons to put her in fear of termination without just cause;

b.    Causing Ascenzo to receive a disciplinary suspension without pay for 14 days for pretextual reasons;

c.    Requiring that Ascenzo accept a *de facto* demotion in pay and releasing Defendant from all claims of discrimination in exchange for TSA officials not filing a "motion to reconsider" with the Appellate Board for pretextual reasons;

d.    Causing the "motion to reconsider" to be filed with the Appellate Board for pretextual reasons;

e.    Forcing Ascenzo to attend "new hire" classes on or about September 19, 2016 even though she had been employed by TSA for many years in a retaliatory effort to harass and humiliate her;

f.    Forcing Ascenzo to report to the coordination center on or about September 19, 2016 even though she had been employed by TSA for many years in a retaliatory effort to harass and humiliate her;

g.    Failing to provide Ascenzo with a work performance rating in October 2016 in an effort to harass and humiliate her in addition to hurting her chances for promotion;

15

h.    Failing to select Ascenzo for a Coordination Center Officer position, as advertised under Vacancy Announcement Number RDU-16-175814, after she duly applied for the same and, on information and belief, was the most qualified applicant for the position;

i.    Failing to provide Ascenzo with due process related to the internal investigation of her on the pretextual disciplinary charges from February 2016 to May 2016; and

j.    In such other and further ways as proven at trial

61.    As a direct and proximate result of Defendant's discriminatory and retaliatory acts toward Ascenzo, as alleged herein, Ascenzo has suffered pecuniary and non-pecuniary harms, losses, and damages in an amount to be proven at trial, but in excess of $25,000.

## DEMAND FOR JURY TRIAL

Ascenzo hereby makes demand for a trial by jury on all triable issues, pursuant to Fed. R. Civ. P. 38 and 42 U.S.C. § 1821a(c).

## PRAYER FOR RELIEF

WHEREFORE, Ascenzo respectfully prays unto the Court as follows:

1.    That Ascenzo receive judgement against Defendant for her past and future pecuniary damages, including back pay with interest thereon, lost benefits, other privileges of employment, and other damages in an amount to be determined at trial, but in excess of $25,000, pursuant to 42 U.S.C. § 2000e-5, *et seq;*

16

2.    That Ascenzo receive judgment against Defendant for past and future compensatory damages, including that for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, damage to career, and other non-pecuniary losses in an amount to be determined by a jury, but in excess of $25,000, pursuant to 42 U.S.C. § 1981a, *et seq*;

3.    That the Court grant Ascenzo permanent injunctive relief requiring Defendant and her officers, successors, agents, managers, and employees to act as follows:

A.    Remove all documentation about the erroenous termination and 14-day suspension from Ascenzo's personnel file and take all necessary steps to rectify the inappropriate  disciplinary actions as if it had never happened;

B.    Enjoin Defendant, her officers, successors, agents, and employees from engaging in any further acts of discrimination and retaliation against Ascenzo;

4.    That the Court require Defendant to reimburse Ascenzo all of her court costs, including expert witness fees, deposition costs, attorneys' fees, and prejudgment interest, as permitted by law;

5.    That the Court grant Ascenzo a jury trial for all matters so triable;

6.    That the Court grant Ascenzo such other and further equitable and legal relief as the Court deems just and appropriate.

17

This the 20th day of March, 2019.

PLAINTIFF PRO SE:

By:   _____

Juliann Ascenzo
9305 Pine Trail Lane
Summerville, South Carolina 29486
Telephone: (702) 816-7441
Email: julenzo@protonmail.com

18